# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JUDY ANN MACINTOSH,

        Plaintiff,

-vs-                                                                   Case No. 6:10-cv-1557-Orl-GJK

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MEMORANDUM OF DECISION

Judy Ann Macintosh (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. Doc. No. 1. Claimant argues that the final decision of the Commissioner should be reversed and remanded for an award of benefits because the Administrative Law Judge (the "ALJ") erred by: 1) failing to consider and make a finding regarding the side effects Claimant's medications had on her ability to work; 2) failing to include certain impairments and limitations in the hypothetical posed to the vocational expert; and 3) rejecting Claimant's testimony that she must keep her legs elevated above her heart. Doc. No. 17 at 7-18. For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

I.     BACKGROUND

Claimant was born on March 17, 1955. R. 91. On March 23, 2007, Claimant filed an application for benefits (hereafter "Application"), alleging a disability onset date of January 1, 2003. R. 91. Claimant's Application was denied initially and upon reconsideration. R. 52, 54. Claimant requested a hearing before an ALJ, which was scheduled for October 8, 2008. R. 65,

1

72. On March 26, 2009, the ALJ denied Claimant's Application, finding she was not disabled. R. 16-27.

## II. MEDICAL AND OPINION EVIDENCE

The medical record reflects that Claimant had a hysterectomy, thyroidectomy and surgery for abdominal incisional hernias. R. 192-202. 283. Claimant has been treated for sleep apnea (R. 206-12); dysphagia (R. 239-40, 244-46); gastroesophageal reflux disease (R. 241-42); left ulnar neuropathy (R. 230, 259, 264-65); low back pain (R. 300); cough and cold (R. 307-08, 312); and pneumonia (R. 323, 325-27). On June 5, 2005, Dr. Michael K. West examined Claimant and conducted a "General Clinical Evaluation with Mental Status." R. 203. Dr. West documented Claimant's past medical problems as "HTN; angina; irregular heartbeat; hypothyroidism." R. 204. Dr. West diagnosed Claimant with cyclothymia and generalized anxiety disorder. R. 205. Dr. West indicated that Claimant's "daily functioning appears to be impacted by primarily by her physical problems and also by her emotional issues. She would be able to manage any disability funds she is awarded." R. 205. Dr. West also opined that Claimant's "ability to understand and remember instructions on a consistent basis is minimally impacted by her psychiatric condition." R. 205. Dr. West opined that Claimant's concentration and persistence "are likely to be impacted by her mood disturbances and anxiety. R. 205. Dr. West opined that Claimant's ability to socially interact would not be impacted and she "appears to be able to respond appropriately to changes in the work routine. She would be able to respond to hazards in the environment." R. 205.

On April 19, 2007, Claimant completed a disability report wherein she indicated that she has "difficulty concentrating because of multiple meds and extreme fatigue." R. 106. Claimant also listed the medications she takes and side effects she experiences. In regard to Claimant's

blood pressure medication, Clonidine, Claimant stated her side effects were "unk[nown]." R. 114. In a subsequent disability report, Claimant stated that taking Clonidine caused her to fall asleep, feel dizzy and tired. R. 154.

On June 15, 2007, Dr. Pamela D. Green reviewed Claimant's medical records and completed a Psychiatric Review Technique. R. 362-75. Dr. Green opined that Claimant suffered from cyclothymia and "GAD." R. 365, 367. Dr. Green found that Claimant had mild limitations on activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace. R. 372. Dr. Green found that Claimant had no episodes of decompensation. R. 372.

On June 20, 2007, Dr. Sam Ranganathan examined Claimant. R. 376-77. Dr. Ranganathan noted that Claimant could walk without assistive devices, could take off her shoes, socks and shirt, as well as sit on the examination table and in the waiting room. R. 377. Dr. Ranganathan did not find any joint effusion, heat, redness, swelling, tenderness, edema, cyanosis or clubbing. R. 377. Dr. Ranganathan opined that Claimant had anxiety neurosis, a history of "HTN," sleep apnea, reflux esophagitis, obesity, COPD, questionable seizure disorder and hypothyroidism. R. 377.

On September 26, 2007, Dr. Cheryl Woodson reviewed Claimant's medical records and completed a Psychiatric Review Technique. R. 379-92. Dr. Woodson opined that Claimant suffered from cyclothymia and generalized anxiety disorder. R. 382, 384. Dr. Woodson found that Claimant had mild limitations on activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace. R. 389. Dr. Green found that Claimant had no episodes of decompensation. R. 389.

On November 10, 2008, Dr. Alvan Barber conducted an independent medical

examination for the Commissioner. R. 409-16. Dr. Barber conducted an orthopedic and physical examination, reaching the following impressions: Claimant was taking medication for her hypertension, but it was poorly controlled; Claimant's asthma was controlled with medication; Claimant took medication for her depression; and Claimant suffers from anxiety, hypothyroidism, sleep apnea, obesity and has a history of cardiac dysrythemia. R. 413.

Dr. Barber also completed a "Medical Source Statement of Ability to do Work-Related Activities." R. 417. Dr. Barber opined that Claimant could frequently lift and carry up to twenty pounds, occasionally lift and carry up to fifty pounds, but could never lift and carry over fifty pounds. R. 417. Dr. Barber opined that Claimant could sit for three hours and stand or walk for two hours without interruption. R. 418. Dr. Barber found that Claimant could sit eight hours and stand or walk six hours in an eight hour workday. R. 418. Dr. Barber opined that Claimant could frequently reach and push/pull and continuously handle, finger and feel. R. 419. Dr. Barber opined that Claimant could frequently operate foot controls. R. 419. Dr. Barber opined that Claimant could never crouch, crawl or climb ladders or scaffolds. R. 420. Dr. Barber opined that Claimant could occasionally balance, stoop, kneel and climb stairs and ramps. R. 420. Dr. Barber opined that Claimant should never be exposed to unprotected heights, extreme cold or heat. R. 421. Dr. Barber opined that Claimant could occasionally move mechanical parts, operate a moving vehicle, and be exposed to vibrations, humidity, wetness, dust, odors, fumes and pulmonary irritants. R. 421. Dr. Barber opined that Claimant could withstand moderate noise. R. 421. Finally, Dr. Barber opined that Claimant could do the following: perform activities like shopping; travel unassisted; ambulate without a wheelchair, walker, canes or crutches; walk a block at a reasonable pace on rough or uneven surfaces; use public transportation; climb a few steps at a reasonable pace using a hand rail; prepare a simple meal

4

and feed herself; care for her personal hygiene; and sort, handle and use papers or files.  R. 422.

## III.   ADMINISTRATIVE PROCEEDINGS

On October 8, 2008, a hearing was held before the ALJ.  R. 28-50.  Claimant and a vocational expert testified at the hearing.  R. 28.  Claimant testified that she is five feet, three inches and weighs 285 pounds.  R. 31-32.  Claimant testified that she drives only to the doctor's office.  R. 32.  Claimant testified that in 2005 she worked four hours one day per week in a daycare center for a few months, earning $1,717.00.  R. 32-33.  Claimant testified that she sat and held babies, but was also required to lift newborns.  R. 33.  Claimant testified that she has not been able to work since filing her Application.  R. 33.

Claimant testified that her thyroid was removed in 2005, after doctors discovered tumors surrounding it.  R. 35.  Claimant testified that she takes Synthroid, but the doctors have difficulty managing her thyroid condition.  R. 35-36.  Claimant testified that her thyroid condition causes her blood pressure to rise, congestive heart failure, fluid around her heart, muscle pain, swelling in her feet and ankles and severe leg pain and cramps.  R. 36.  Claimant testified that she can sit for fifteen minutes before her legs ache and then she has to lay with her feet elevated above her heart.  R. 36, 41.  Claimant testified that she can stand no longer than five minutes, is not supposed to lift more than five pounds, sometimes cannot lift her arms and her "muscles hurt really bad."  R. 36, 41.  Claimant testified that she takes Clonidine to control her blood pressure, which makes her sleep.  R. 36.

Claimant testified that she suffers from asthma, walking fifteen yards causes her to have chest pains and get out of breath and that she cannot walk up or down stairs.  R. 37.  Claimant testified that she suffers from anxiety panic disorder and cannot be around a lot of people or noise because her throat closes and she has to have it dilated.  R. 38.  Claimant testified that she

5

learned how to perform the Heimlich maneuver on herself when this happens. R. 38. Claimant testified that she has a hernia, acid reflux, ulcers, stomach polyps and severe sleep apnea. R. 39. Claimant also testified to suffering from bipolar disorder and taking Lexapro to help with her depression. R. 39. Claimant testified that she cannot work because "I get so out of breath and when my blood pressure goes up my heart starts to beat too hard. It's just -- it's too taxing on me to do anything strenuous at all." R. 40.

Claimant testified that she normally wakes up at 4 a.m., lays in bed until 9 a.m., gets up and lets her dog outside and then reads while laying down with her feet elevated. R. 43. Claimant testified that most of her day is spent lying down with her feet elevated, sleeping intermittently and eating once per day. R. 43. Claimant testified that she does not perform any housework, cook or do laundry. R. 44. Claimant testified that her mother usually grocery shops for her and she normally does not go because it requires too much walking and standing. R. 44. Claimant testified that she can bathe and dress herself. R. 44.

The ALJ informed the vocational expert that Claimant has no past relevant work. R. 46. The ALJ asked the vocational expert to consider a hypothetical person with the same age, educational background and past work experience as Claimant. R. 45. The ALJ asked the vocational expert to assume this hypothetical person had the RFC to perform light work with the following limitations: never climbing ladders, ropes or scaffolds and only occasionally climbing, balancing, stooping, kneeling, crouching or crawling. R. 45-46. The ALJ asked the vocational expert whether there were jobs in the national economy this hypothetical person could perform. R. 46. The vocational expert testified this person could work as an office helper and a cashier. R. 46. When asked whether this hypothetical person could perform these jobs if the hypothetical person "can only perform simple, routine tasks," the vocational expert testified she could. R. 47.

6

On March 26, 2009, the ALJ issued his decision. R. 16-27. The ALJ found that Claimant suffered from the severe impairments of morbid obesity, hypertension, hypothyroidism and an affective disorder. R. 18. The ALJ found that Claimant had the RFC to perform light work, "except that she is only able to perform simple, routine tasks. She is able to occasionally climb, balance, stoop, and kneel. She should never climb ladders, ropes and scaffolds; crouch; or, crawl." R. 22. In making his RFC finding, the ALJ evaluated Claimant's credibility:

> The undersigned has considered the allegations of the claimant and finds them partially credible but not supported by the objective clinical and laboratory findings of record, and the claimant's activities of daily living. She is able to do limited household chores and to attend her doctor appointments. She goes shopping and she is able to cook meals. She takes care of a small dog. Her son and daughter frequently visit with her. She reported to Dr. West that she worked primarily as a stay at home mother and raised her kids, but did work with her daughter in a church daycare for a few months. Although that work does not qualify as substantial gainful activity, it does indicate that the claimant's daily activities have at times been somewhat greater than she has generally reported. Moreover, even though the claimant is receiving treatment for the allegedly disabling impairments, the treatment, is essentially routine and conservative in nature. The record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision. Indeed, certain aspects of the medical examiners, Drs. West and Barber opinions are in fact, consistent with the residual functional capacity reached by the undersigned.
>
> The undersigned has carefully considered the claimant's allegations of pain, particularly in light of the above statements. However, the claimant's description of the severity of constant pain has been so extreme as to appear implausible. Moreover, the claimant's medical record does reflect objective evidence, which demonstrates a basis for some pain but not to the extent and severity alleged by the claimant. The undersigned must necessarily conclude that her activities speak far more loudly in revealing the claimant's capabilities. Moreover, no physician indicated that the claimant was disabled. Finally, the overall evidence strongly demonstrates that the claimant's medication

regimen was relatively effective in controlling her symptoms.

R. 24 (internal citation omitted). Thus, the ALJ found Claimant was partially credible, but her testimony regarding the severity of her pain was implausible.

The ALJ, relying on the vocational expert's testimony, found that Claimant could work as an office helper or cashier. R. 25. The ALJ found Claimant not disabled. R. 26. On August 27, 2010, the Appeals Council denied Claimant's request for review. R. 1-3. Claimant timely appealed to the District Court. Doc. No. 1.

**IV.    THE ISSUES**

Claimant raises three issues on appeal. First, Claimant points out that she takes a dozen medications and asserts that she testified about the side effects of her medications at the hearing. Doc. No. 17 at 7-8. Claimant asserts the ALJ has a duty to elicit testimony and make findings regarding the effects medications have on a claimant's ability to work, citing *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir. 1981). Doc. No. 17 at 8-9. Claimant argues the ALJ erred by not making a finding regarding the effect Claimant's medications have on her ability to work. Doc. No. 17 at 9. Claimant also argues that the Appeals Council is required to evaluate the entire record, but did not even mention Claimant's medications. Doc. No. 17 at 10.

Second, Claimant argues that the ALJ erred in relying on the vocational expert's testimony in finding that she could perform other jobs. Doc. No. 14 at 12. Claimant asserts that the ALJ's hypotheticals failed to include the side effects of Claimant's medications; failed to include limitations stemming from her depression, anxiety and ulnar neuropathy; and did not include a limitation to simple, routine tasks. Doc. No. 17 at 11-15. Claimant also asserts that the vocational expert's testimony conflicts with the Dictionary of Occupational Titles (hereafter "DOT"). Doc. No. 17 at 15. Third, Claimant argues that the ALJ erred by not giving "reasons

that explicitly or adequately reject [Claimant's] testimony that she must raise her legs." Doc. No. 17 at 18 (internal citation omitted).

The Commissioner argues that the ALJ did not err in failing to discuss Claimant's medication side effects because Claimant did not present any evidence in support of this claim and the medical record does not support such a finding. Doc. No. 18 at 7-9. The Commissioner argues that the ALJ properly relied on the vocational expert's testimony because the ALJ's hypothetical expressly accounted for simple, routine tasks. Doc. No. 18 at 11. The Commissioner argues that the vocational expert's testimony did not conflict with the DOT. Doc. No. 18 at 12-13. The Commissioner asserts the ALJ was not required to include medication side effects and the other impairments Claimant identifies because the medical record does not support a finding that any functional limitations are attributable to them. Doc. No. 18 at 13-18.

The Commissioner argues that the ALJ properly found Claimant's testimony that she had to have her legs elevated not credible because she did not present any supporting evidence and such a claim is not supported by the medical record. Doc. No. 18 at 5-7.

## V. LEGAL STANDARDS

### A. ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe

> impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire

record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## VI. ANALYSIS

### A. Medication Side Effects

A relevant factor an ALJ should consider when making a credibility determination regarding a claimant's subjective symptoms includes the "type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms." 20 CFR § 404.1529(c)(3)(iv). When an unrepresented claimant's testimony raises a question about the side effects of medication, the "ALJ has a special duty to elicit additional testimony or otherwise make a finding about such side effects." *Colon ex. rel. Colon v. Comm'r*, 411 F. App'x. 236, 238 (11th Cir. 2011).[1] However, when a "represented claimant makes a similar statement, but does not otherwise allege that the side effects contribute to the alleged disability, we have determined that the ALJ does not err in failing to 'inquire further into possible side effects.'" *Id.* (quoting *Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985)). If there is no evidence presented to the ALJ "that a claimant is taking medication that causes side effects, the ALJ is not required to elicit testimony or make findings regarding the medications and their side effects." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x. 901, 904 (11th Cir. 2011).

In *Colon ex. rel. Colon*, 411 F. App'x. at 238, the court indicated that the ALJ noted the obligation to consider the side effects of claimant's medications and summarized the evidence

---

[1] In the Eleventh Circuit, unpublished opinions are not binding, but are persuasive authority.

11

regarding same. The claimant "reported some side effects from his medications in a disability report and his lawyer had given the ALJ a list of . . . medications and their side effects . . . ." *Id.* At the hearing, however, the claimant "did not mention his medication side effects in response to the ALJ's questions about why he could not return to work." *Id.* The court indicated that because the claimant was represented by counsel the ALJ was not required to inquire any further about any medication side effects. *Id.* In *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990), the court concluded that the ALJ did not err in failing to consider the side effects of medication because the claimant testified that "she felt that one medication might be giving her headaches, and the record did not disclose any concerns about side effects by the several doctors who examined and treated her." *Id.*

In *Walker v. Commissioner of Social Security*, 404 F. App'x. 362, 366 (11th Cir. 2010), the claimant testified and complained to her treating physicians of dizziness and headaches due to her medications. Recognizing this testimony should be considered in evaluating the claimant's subjective symptoms, the ALJ found that the claimant's "statements concerning the intensity, persistence and limiting effects of her symptoms were 'not entirely credible.'" *Id.* at 367. The Eleventh Circuit concluded this finding encompassed the claimant's testimony about her side effects. *Id.* It is not reversible, however, for an ALJ not to "expressly mention the side effects of . . . medications in his credibility determination." *French v. Massanari*, 152 F. Supp. 2d 1329, 1338 n. 6 (M.D. Fla. 2001).

In this case, Claimant was represented by counsel and listed the side effects of her medications in disability reports. *See* R. 106, 154. At the hearing, however, Claimant did not testify that the side effects of her medications prevent her from working. *See* R. 36, 43. Claimant only testified that the side effects of her blood pressure medication cause her to sleep.

12

R. 36, 43. When asked for the "main reason" she could not work, Claimant did not mention her medication side effects. *See* R. 40. The medical record also does not indicate that Claimant complained about the side effects of her medications to her treating doctors. Further, the ALJ stated that "[C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 24.

The ALJ was not required to make specific findings concerning the side effects of Claimant's medications because Claimant was represented at the hearing and did not testify that the side effects of her medications either contributed to her disability or prevented her from working, despite being given the opportunity to do so. *See Colon ex. rel. Colon*, 411 F. App'x. at 238. The medical record does not indicate that Claimant complained about her medication side effects to her treating doctors or that the treating doctors expressed any concerns about same. *See Swindle v. Sullivan*, 914 F.2d at 226. Furthermore, the ALJ's credibility finding encompassed Claimant's testimony concerning her medication side effects. *See Walker*, 404 F. App'x at 367. Based on the foregoing, neither the ALJ nor the Appeals Council erred in regard to considering the side effects of Claimant's medications.

### B. The ALJ's Hypotheticals

At step five, the Commissioner bears the burden of establishing jobs the claimant can perform that exist in the national economy. *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x. 135, 137 (11th Cir. 2009). This can be accomplished by the ALJ posing a hypothetical to a vocational expert. *Id.* The hypothetical must comprise all of a claimant's impairments. *Id.* However, the "ALJ is not required to include findings in the hypothetical that the ALJ properly rejects." *Id.* Impairments that are alleged by the claimant but are not supported by substantial evidence do not

need to be included in the hypothetical and the "hypothetical need not include 'each and every symptom' alleged by a claimant." *Id.* (quoting *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1260 (11th Cir. 2007)).

When "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). "Furthermore, an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x. 869, 872 (11th Cir. 2011).

In *Jarrett*, 422 F. App'x at 872, the ALJ's hypothetical to the vocational expert restricted the individual to work involving simple instructions and tasks. The Eleventh Circuit concluded that the ALJ's hypothetical sufficiently accounted, both explicitly and implicitly, for the claimant's limitations in concentration, persistence and pace because two non-examining consultants opined the claimant could perform simple tasks despite the claimant's moderate limitation in maintaining concentration, persistence and pace. *Id.*

The ALJ did not err in failing to include anxiety, depression and ulnar neuropathy in the hypotheticals posed to the vocational expert because the ALJ did not find them to be impairments. *See Wright*, 327 F. App'x. at 137 (ALJ not required to include limitations he properly rejects). Further a hypothetical is not required to include every symptom alleged by a claimant. *Id.* The ALJ did not err in failing to include the side effects of Claimant's medications

14

for the reasons set forth above.

Claimant's assertion that the ALJ "did not include a limitation in simple, routine tasks in his hypothetical question to the vocational expert" ignores the testimony at the hearing. The ALJ specifically asked the vocational expert whether a hypothetical person who "can only perform <u>simple, routine tasks</u>" would be able to work as an office helper and cashier. R. 47 (emphasis added). Thus, the ALJ specifically included a limitation to simple, routine tasks in his hypothetical. R. 47.

The vocational expert testified that the jobs of office helper, DOT number 209.562-010, and cashier, DOT number 211.462.010, have an SVP of 2. R. 46.[2] The DOT classifies the job of cashier as having an SVP of 2. *See* DOT # 211.462-010; *Anderson v. Astrue*, No. 2:11-00046-N, 2011 WL 3843683 at *2 n.5 (S.D. Ala. Aug. 30, 2011); *Hayes v. Astrue*, No. 3:07-cv-137(CDL), 2009 WL 481473 at *3 (M.D. Ga. Feb. 23, 2009). As referenced by the ALJ, DOT number 209.562-010 is associated with the job of general clerk and has an SVP of 3.[3] Thus, the vocational expert incorrectly identified the DOT number associated with office helper, but correctly testified that the job of office helper has an SVP of 2. This conflict is not a basis for reversal because the vocational expert's testimony trumps the DOT when the vocational expert's testimony conflicts with the DOT. *See Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999). Furthermore, the vocational expert's error in referencing the incorrect DOT number for office helper is clearly harmless for two reasons. First, the ALJ correctly testified that the work category of office helper has an SVP of 2. Second, the ALJ correctly identified the DOT and

---

[2] "SVP" is an acronym for "specific vocational preparation," an estimate of the time it takes a new employee to achieve average performance on the job. *Thompson v. Comm'r of Soc. Sec.*, No. 6:09-cv-906-Orl-31GJK, 2010 WL 1730804 at *3 (M.D. Fla. Apr. 28, 2010).

[3] The correct DOT number for office helper is 239.567-010.

SVP numbers associated with the alternative work category of cashier. Accordingly, the Court rejects Claimant's argument that the ALJ's reliance on the vocational expert's testimony requires reversal.

### C. Claimant's Testimony

"If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. A reviewing court will not disturb a clearly articulated credibility finding that is supported substantial evidence in the record. *Id.* at 1562. The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Id.* The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Id.* If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Id.* (*quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court)).

"While an adequate credibility finding need not cite particular phrases or formulations . . . . broad findings that [a claimant] lacked credibility and could return to her past work alone are not enough to enable us to conclude that [the ALJ] considered her medical condition as a whole." *Foote*, 67 F.3d at 1562 (internal quotations omitted). In determining credibility the ALJ "'must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the

individual, and any other relevant evidence in the case record.'" *Joyce v. Comm'r of Soc. Sec.*, No. 3:10-cv-842-J-MCR, 2011 WL 4048998 at *7 (M.D. Fla. Sep. 13, 2011) (quoting Social Security Ruling 96–7p).

The ALJ found Claimant's testimony regarding her allegations of disabling impairment "partially credible but not supported by the objective clinical and laboratory findings of record, and the claimant's activities of daily living." R. 24. The ALJ listed the following reasons for making these credibility determinations: Claimant's activities in doing limited household chores, shopping, cooking meals, caring for a small dog, attending doctor's appointments, raising her children and working part-time at a daycare center for a few months. R. 24. The ALJ also noted Claimant's medical treatment was conservative, the record did not contain any medical opinions indicating disability or impairment beyond those found in the ALJ's RFC. The ALJ further noted the RFC was consistent with the medical opinions of Drs. West and Barber. R. 24. The ALJ found Claimant's "description of the severity of constant pain . . . so extreme as to appear implausible." R. 24. The ALJ acknowledged that Claimant's "medical record does reflect objective evidence, which demonstrates a basis for some pain but . . . must necessarily conclude that her activities speak far more loudly in revealing the claimant's capabilities." R. 24. Once again, the ALJ emphasized no physician opined Claimant was disabled. Finally, the ALJ indicated the overall evidence strongly demonstrated Claimant's medications were effective in controlling her symptoms. R. 24.

Claimant's assertion that the ALJ "did not give any reason" for rejecting her testimony that she must keep her legs elevated is clearly refuted by a plain reading of the ALJ's decision. Accordingly, the ALJ did not err in finding Claimant was not credible.

## VII. CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**;

2. The Clerk is directed to enter judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Orlando, Florida on March 14, 2012.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson
3200 Corrine Drive, Suite E
Orlando, Florida 32803

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
John C. Stoner, Branch Chief
Jennifer L. Patel, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Robert D. Marcinkowski
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801